IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:23-cv-01676-FL

ANTONIO TREY JONES, by and )
through his Guardian Ad Litem, )
CHARLES M. BRITTAIN III, )
  )
   Plaintiff, )
  )
   v. )  PLAINTIFF'S MEMORANDUM
  )  IN SUPPORT OF JOINT
JAMES THORNTON, individually )  MOTION FOR COURT APPROVAL
and in his official capacity; WILLIAM ) OF COMPROMISE SETTLEMENT
BRADY, individually and in his )
official capacity; ANDREW WORLEY, )
individually and in his official )
capacity; CHRISTOPHER GODWIN, )
individually and in his official )
capacity; SAMPSON COUNTY; and )
THE OHIO CASUALTY INSURANCE )
COMPANY, individually, and as a )
subsidiary to LIBERTY MUTUAL )
INSURANCE COMPANY, as Surety, )
  )
   Defendants. )
_____ )

  NOW COMES the Plaintiff, Antonio Trey Jones and his Guardian Ad Litem,

Charles M. Brittain, III, ("Petitioner"), by and through the undersigned counsel, and

hereby move the Court for approval of: (1) the respective proposed settlement

agreements; (2) the release of any and all claims, actual or potential, of the above-

captioned Plaintiff against said Defendants and Defendants' insurance company or

companies for any and all claims of Plaintiff resulting from the allegations described

below; (3) the payments, including, but not limited to, the methods of payment

provided for in the settlement agreements; and (4) the approval of the attorney's fees, as well as reimbursement of case expenses and costs incurred in the prosecution of this action:

## I.      Statement of the Case

1.      On December 19, 2023, Petitioner brought this action as the Guardian Ad Litem of Antonio Trey Jones, seeking relief from Defendants for damages allegedly caused by the depravation of Plaintiff's civil rights.

2.      Plaintiff alleges in substance that, on or around May 5, 2014, Defendants coerced Plaintiff, then an intellectually disabled 14-year-old, into giving a false confession to the rape and murder of another child.  Plaintiff alleges he suffered years of unjust incarceration as a result of the acts and omissions of Defendants.  Evidence was also produced during discovery that Plaintiff suffered both emotional and physical injuries while incarcerated.

3.      Since he was a child, Plaintiff has suffered under an intellectual disability, characterized by an FSIQ score of 55, which places him in the bottom 2% of the population.

4.      Against this backdrop, Defendants William Brady, a special agent for the North Carolina State Bureau of Investigation, and Andrew Worley, a detective for the Sampson County Sheriff's Department, interrogated Plaintiff about the rape and murder of McKenzie Sessoms, an 11-year-old neighbor.

5. Defendants isolated the then juvenile Plaintiff from his mother and treated him like an adult. Defendants failed to either recognize or account for Plaintiff's intellectual limitations, despite obvious signs of his disability.

6. Without any physical evidence linking Plaintiff to the crimes, Defendants relied on his alleged confession to justify his arrest and prolonged incarceration.

7. DNA lab reports produced between 2013 and 2017 exonerated Plaintiff and inculpated another suspect.

8. On October 4, 2020, Superior Court Judge Henry L. Stevens, IV, suppressed the confession finding it unreliable and inconsistent with the other evidence in the case. Judge Stevens found that Plaintiff showed noticeable signs of being intellectually "delayed" in his demeanor, speech, and perceived general understanding, contradicting investigators' claims that Plaintiff appeared "normal" in 2014 when he confessed.

9. Prosecutors voluntarily dismissed the still-pending charges against Plaintiff on March 11, 2021, nearly seven years after his arrest.

10. Defendants deny any liability whatsoever in causing Plaintiff's damages and claims resulting therefrom.

## II. Basis of the Parties' Settlement

11. After two and a half years of complex, costly, and hard-fought litigation in this matter with skilled advocacy and representation to all parties involved,

Plaintiff and Defendants now jointly come before the Court seeking approval of the settlement to resolve all claims between them in this action.

12. The parties to this action reasonably and in good faith believe that the settlement is a complete resolution of all claims including for physical injuries that were or could have been brought in this case. The parties further desire that the Court should review the terms of the settlement agreements and enter an Order of Approval. Plaintiff and Petitioner understand that such settlement, if approved by the Court, will be final and do approve the same and are offering the same to the Court for the Court's approval.

13. Plaintiff and Defendant William Brady have agreed, subject to this Court's approval, to settle and compromise all matters at issue in this action. As a material term of said settlement, Plaintiff has agreed to accept in full settlement, satisfaction, release and compromise of his claims the sum of Eight Million Dollars ($8,000,000.00) to be disbursed as set forth in Defendant William Brady's "Settlement Agreement and Release" which is attached hereto as Exhibit "A-1" and is hereby incorporated by reference as if fully set forth herein.

14. Plaintiff and Defendants James Thornton, Christopher Godwin, Andrew Worley, Sampson County, and The Ohio Casualty Company/Liberty Mutual Insurance Company (the "Sampson County Defendants"), have also separately agreed, subject to this Court's approval, to settle and compromise all matters at issue in this action. As a material term of said separate settlement, Plaintiff has agreed to accept in full settlement, satisfaction, release and compromise of his claims the sum

of Two Million Dollars ($2,000,000.00).  The Samson County Defendants' "Release of Claims" is attached hereto as Exhibit "A-2" and is hereby incorporated by reference as if fully set forth herein.

15.     In addition, and as part of the settlement agreements reached between Plaintiff and Defendant William Brady, it is also agreed that it is in the best interest of Plaintiff that a reasonable portion of Plaintiff's settlement recovery will be placed in a qualified structured settlement annuity purchased for the guaranteed benefit of Plaintiff, the details of which are outlined in the Settlement Agreement and Release.

16.     Plaintiff's proposed Distribution Memorandum is attached hereto as Exhibit "B" and incorporated by reference as if fully set forth herein.  The proposed Distribution Memorandum identifies the dollar amounts of the settlement payments, as well as a complete breakdown of the proposed distribution of said amounts to the settlement preservation trust established for the sole and exclusive benefit of Plaintiff, for the purchase of a qualified structured settlement annuity for the guaranteed benefit of Plaintiff,  and to Plaintiff's attorneys for payment of the agreed-upon fees and reimbursement of case expenses.  Also included within Exhibit "B" is the detailed structured settlement annuity proposal showing the guaranteed benefits payable to Plaintiff over the life of the structure, which is a substantial sum for Plaintiff if approved by the Court.

17.     The settlement recovery by Plaintiff in this matter represents valuable and substantial compensation obtained for the benefit of Plaintiff, and represents funds that will benefit from the conservative investment and prudent management

by qualified trust professionals, in the best future interest of Plaintiff, as ensured by the settlement preservation trust vehicle described herein below.

18.     The settlement preservation trust ensures that Plaintiff will receive the full range of benefits and services of professional and conservative asset administration and management that is specifically designed to serve the interests of the beneficiary.  The assets of Plaintiff will be professionally managed for his sole benefit and will be invested, managed, and distributed during his life based on Plaintiff's individualized needs.

19.     The settlement preservation trust is officially titled the "Antonio Trey Jones Irrevocable Trust" and is attached hereto as Exhibit "C" and is incorporated by reference as if fully set forth herein.

20.     Under the provisions of the Antonio Trey Jones Irrevocable Trust, Old North State Trust, LLC will act as the Trustee, Charles M. Brittain, III, is designated as the Trust Protector, and Live Oak Private Wealth, LLC will provide investment services to the Trust.

21.     The parties and Petitioner understand that the settlement with all of the Defendants in this action are final agreements with respect to any and all claims which have previously arisen or which may arise hereafter in favor of Plaintiff against any of the Defendants named herein as a result of the incident described above, and that this settlement is being submitted to the Court for its consideration and approval in order that such settlement may be valid and binding for all purposes according to law.

22.     Petitioner and all counsel agree that this settlement is in the best interest of the parties in that: (1) the settlement will avoid the expense and uncertainty of trial; (2) the settlement provides recovery now and represents a reasonable compromise in light of the prospects of recovery against Defendants in this action; and (3) this settlement will resolve all disputes between the parties arising from this action.

23.     Petitioner is familiar with the facts of this claim, the mental capacity of Plaintiff, and the relative strength of Plaintiff's claims against Defendants should those move forward to trial, and Petitioner is of the opinion that the proposed settlement between the parties is fair, reasonable, and in the best interest of Plaintiff Antonio Trey Jones. All interested parties to this motion and their counsel agree.

### III.     Application of Rule 17.1 of the Local Civil Rules of Practice and Procedure to the Joint Motion

24.     Plaintiff brings the Joint Motion at the request of Defendants and Defendants' insurance companies in order that such settlement may be valid and binding for all purposes according to law.  As a material term of the mediated settlement agreement, Defendants incorporated a demand that Plaintiff voluntarily submit to the court approval process.

25.     Petitioner informs the Court that Plaintiff has never been adjudicated legally incompetent under North Carolina law and therefore the jurisdictional criteria of Local Civil Rule 17.1 are not present as Plaintiff is neither legally incompetent nor a minor.  Notwithstanding, after giving careful consideration to the litigation risk as outlined above and the terms of the settlement agreements, it is the

desire of all parties that finality to this litigation be realized, such that the parties hereby request the Court to exercise jurisdictional discretion to approve the settlement agreement under Local Civil Rule 17.1.

26. Petitioner hereby offers the Court additional facts as to why the present action was brought through a guardian ad litem without an adjudication of incompetency as to Plaintiff.

### A. An adjudication of incompetency is not in Plaintiff's best interests.

27. In North Carolina, there is a strong public policy against adjudication of incompetency until "the actual and positive necessity therefor is shown to exist." *Nicholson v. Zimmerman*, 2020 U.S. Dist. LEXIS 167222, 18 (M.D.N.C. 2020), quoting *Hagans v. Redevelopment Com. of Greensboro*, 275 N.C. 90, 165 S.E.2d 490 (1969). Upon being adjudicated incompetent, the ward could lose important liberty interests including the right to marry, make a last will and testament, testify as a witness, procreate, or consent to or refuse certain medical treatment. N.C. Gen. Stat. § 35A-1117.

28. In addition to the concern for the permanent loss of certain rights, Petitioner and counsel for Plaintiff (Anstead) decided against having Plaintiff undergo incompetency proceedings because a question remains as to whether Plaintiff meets the requirements for legal incompetence anyway. As noted in *Nicholson*, "a low IQ or other mental disability does not, by itself, suffice to establish incompetency." 2020 U.S. Dist. LEXIS 1677222 at *16. "Mere weakness of mind will not be sufficient to put a person among those who are incompetent to manage their

own affairs." *Hagans*, 275 N.C. at 105.

29.     It was the professional judgment of Mr. Anstead and Mr. Brittain that Plaintiff need not be stripped of his rights through an incompetency adjudication simply to bring the present action through a guardian ad litem.

### B. A Guardian Ad Litem was appointed to protect the interests of Plaintiff because he suffers from some degree of intellectual disability.

30.     Under Fed. R. Civ. P. 17 and its companion North Carolina rule, there is nothing which prevents the court from appointing a guardian ad litem to represent a person not previously adjudicated as incompetent through a state court proceeding. *Fonner v. Fairfax County*, 415 F.3d 325, 330 (4th Cir. 2005); see also, N.C. Gen. Stat. § 35A-1102 (nothing in this Article shall interfere with the authority of a judge to appoint a guardian ad litem for a party to litigation under Rule 17(b) of the North Carolina Rules of Civil Procedure").

31.     Given that Plaintiff suffers from an intellectual disability characterized by a FSIQ of 55, it was concluded that caution and prudence necessitated the appointment of a guardian ad litem to protect Plaintiff's interests during the litigation.

32.     On October 2, 2023, a petition to appoint Charles M. Brittain, III as Guardian Ad Litem was filed in the Superior Court of Bladen County, North Carolina.

33.     On October 9, 2023, the Honorable R. Kent Harrell, Superior Court Judge entered an order appointing Mr. Brittain as guardian ad litem to bring this litigation.  The court did not adjudicate the question of incompetency.  The Order

Appointing Guardian Ad Litem is attached hereto as Exhibit "D" and is incorporated by reference as if fully set forth herein.

**IV.  Certifications Required by Rule 17.1 of the Local Civil Rules of Practice and Procedure**

34.  (1) The Parties certify that all parties are properly represented and are properly before the court, that no questions exist as to misjoinder or nonjoinder of parties, and that the court has jurisdiction over the subject matter and the parties.

35.  (2) Plaintiff brought this action pursuant to 42 U.S.C. § 1983 for the depravation of his civil rights under the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States of America as well as other state law claims. [DE #7].  Plaintiff alleges that, on or around May 5, 2014, Defendants coerced Plaintiff, then an intellectually disabled 14-year-old, into giving a false confession to the rape and murder of another child.  Plaintiff contends that the criminal proceedings against him were initiated without probable cause.  Plaintiff alleges he suffered years of unjust incarceration as a result of the acts and omissions of the Defendants, resulting in significant emotional and physical injuries.

36.  (3) Petitioner is satisfied with the legal services of Patrick R. Anstead and Robert H. Jessup, IV, who were Plaintiff's lead attorneys.  The extent of the legal services provided by Mr. Anstead and Mr. Jessup are more fully detailed in their respective Declarations.  The Declaration of Mr. Anstead is found at Exhibit "E."  The Affidavit of Mr. Jessup is found at Exhibit "F."  Exhibits "E" and "F" are hereby incorporated by reference as if fully set forth herein.  The outcome of Plaintiff's case was not predestined, as it presented complex facts and issues of law.  Plaintiff's

attorneys obtained considerable monetary relief to compensate Plaintiff for the years of unjust incarceration and abuse he experienced.

37.    (4) Plaintiff's primary claim was for the depravation of his civil rights, although he did suffer severe emotional distress and physical abuse proximately caused by the conduct of Defendants.  Plaintiff was examined on multiple occasions by Dr. Robert S. Brown, Jr., M.D.  Dr. Brown is a forensic psychiatrist who examined Plaintiff as a retained expert.  Dr. Brown issued a Rule 26 report on April 7, 2025, which addressed Plaintiff's current and future mental health care needs.  Dr. Brown diagnosed Plaintiff with Post Traumatic Stress Disorder in the context of severe polytrauma, proximately caused by the conduct of Defendants and the years of emotional and physical abuse he suffered while incarcerated.  Dr. Brown opined that Plaintiff will require four psychiatric visits per year as well as psychopharmacology management for the remainder of his life.  Dr. Brown opined that Plaintiff will require monthly psychotherapy visits for the next five years.  Plaintiff's prognosis is good with adequate psychiatric intervention.  Plaintiff is not presently under the care of any mental health professionals.  The settlement amount and structured payments will be adequate for Plaintiff to maintain private health insurance and obtain appropriate mental health care.

**V.    Rule 17.1(c) of the Local Civil Rules of Practice and Procedure – Approval of Attorney's Fees**

38.    Petitioner approves of the 40% contingency fee agreement, plus reimbursement of case expenses, which is contracted for, and notes that Plaintiff's attorneys obtained an extraordinary result.  The Declaration of Charles M. Brittain,

III, is attached hereto as Exhibit "G" and is incorporated by reference as if fully set forth herein.

39. In determining whether a fee is reasonable, the court should look at the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1975) as adopted by *Barber v. Kimbrell's, Inc., 577 F.2d 216, 226* (4th Cir. 1978). The *Barber* factors apply "even where the fee request is based on a private fee agreement." *Allen v. United States*, 606 F.2d 432, 435-36 (4th Cir. 1979).

40. To withstand scrutiny the court must carefully consider the factors relevant to fair compensation. See *Allen*, 606 F.2d at Id.

41. The twelve factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal services properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, (12) awards in similar cases.

42. Petitioner believes the following *Barber* factors should be considered by the Court.

43. Time and Labor Required: As noted in their respective declarations, a substantial and sustained investment of attorney time was required of Mr. Anstead and Mr. Jessup to represent Plaintiff and prevail.

44.     The Novelty and Difficulty of the Questions Raised:  Plaintiff's case is unique in that the legal claims sound of wrongful conviction, but Plaintiff was never convicted of the criminal charges that are the basis of this suit, placing his legal claims in a comparatively uncommon procedural posture for civil rights litigation. Plaintiff's counsel conducted significant research, analyzed voluminous case material, and consulted scholarly commentary to prepare the suit.  The case was fully litigated through discovery.  There were difficult and complex issues of officer immunity, municipal immunity, insurance coverage and expert testimony.

45.     Requisite Skill to Perform Legal Services Properly: Plaintiff's case demanded a high degree of professional skill and litigation proficiency.  Presenting the case properly required mastery of a substantial factual record, the application of skill to a complex and extensive discovery schedule, and vigorous negotiation.

46.     The Customary Fee:  As stated in their respective declarations, Mr. Anstead and Mr. Jessup are familiar with the customary fee they and other civil rights litigators charge in complex cases like Plaintiff's.  The 40% contingency fee plus the reimbursement of case expenses is the standard fee Mr. Anstead and Mr. Jessup charge at their firms for complex litigation in federal court and certain complex litigation in state court.  The Declaration of Matthew Ballew is attached hereto as Exhibit "H" and is incorporated by reference as if fully set forth herein.  Mr. Ballew is an experienced civil rights litigator who charges a 40% contingency fee plus the reimbursement of case expenses in similar claims.  Like Plaintiff's counsel, Mr. Ballew agrees that a 40% contingency fee plus the reimbursement of case expenses

is fair and consistent with that which other attorneys throughout North Carolia charge for similar litigation.

47.     Fixed or Contingent Fee: In *Pellegrin v. Nat'l Union Fire Ins. (In re Abrams & Abrams, P.A.)*, 605 F.3d 238, 245 (4th Cir. 2010), the court stated that contingency fee agreements carry "considerable advantages" for Plaintiffs. Contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation. See *Pellegrin*, 605 F.3d at Id. "Sadly, a plaintiff sometimes has little to offer a lawyer other than his personal plight." Id.  In *Pellegrin*, the court elaborates on the desirability and acceptance of contingency fee arrangements in litigation by noting their use in disputes dating back to the year 1823 to enable the poor and destitute to find counsel.

48.     Amount Involved and Results Obtained:  The amount obtained by Plaintiff's counsel is objectively large.  Upon information and belief, Plaintiff's settlement represents the largest civil rights settlement in the history of the Eastern District of North Carolina in a malicious prosecution style suit where the Plaintiff was never convicted of the underlying criminal offenses.  Plaintiff's settlement is legally significant, will be featured in future scholarly commentary, and will shape the practice area going forward.

49.     Experience, Reputation and Ability of the Attorneys:  Both Mr. Anstead and Mr. Jessup are well regarded attorneys in North Carolina.  Select cases and settlements by both attorneys have been featured in North Carolina Lawyers Weekly and the North Carolina Advocates for Justice's Trial Briefs.  Mr. Anstead serves on

the Civil Rights Pro Bono Panel in the Eastern District of North Carolina where he is regularly appointed by a United States Magistrate Judge to assist *pro se* claimants in court-hosted settlement conferences. Mr. Jessup is a leader in plaintiff-oriented litigation throughout North Carolina. He has been an invited lecturer and presenter at legal symposiums and continuing education conferences. Mr. Jessup is a board member of the North Carolina Mock Trial Program.

50. Undesirability of the Case: The Affidavit of Tony Jones is attached hereto as Exhibit "I" and is incorporated by reference as if fully set forth herein. As stated in Mr. Jones's affidavit, Plaintiff and his father searched for 2 ½ years to locate an attorney who was willing to take Plaintiff's case. Put another way, for 2 ½ years Plaintiff and his father were rejected by every attorney they spoke to about Plaintiff's case. But for the willingness of Mr. Anstead to accept Plaintiff's case on a contingency fee basis and assume significant risk, it is highly likely that Plaintiff's damages would have gone unredressed.

51. Nature and Length of the Professional Relationship: Mr. Anstead has represented Plaintiff for just over three years. Mr. Jessup has represented Plaintiff for nearly 1 ½ years. In his affidavit, Mr. Jones describes the close relationship that Plaintiff has developed with his attorneys. Due to his intellectual limitations and limited social circle, it is likely that Plaintiff will maintain a relationship with, and seek the counsel of, his attorneys for the remainder of his life.

52. Awards in Similar Cases: Upon information and belief, the award in Plaintiff's case has no analogue. Plaintiff's attorneys obtained an outstanding and

noteworthy result.

53.    Due to the co-counsel agreement, Plaintiff's attorneys will receive 20% respectively, which is well below the usual and customary rate charged in complex civil rights litigation.

54.    There is no fee opponent contesting the fee agreement between Plaintiff and his attorneys.

WHEREFORE, Plaintiff Antonio Trey Jones and Charles M. Brittain, III, his Guardian Ad Litem, respectfully move the Court to enter an Order of Approval:

1. Finding that the settlement on the basis previously described herein is just, fair, reasonable, and in the best interest of Plaintiff;

2. Granting the parties' Joint Motion for Court Approval of Compromise Settlement, expressly approving the payment of attorney's fees and case reimbursements, and directing the distribution and transfer of settlement proceeds as requested herein above;

3. Finding the Antonio Trey Jones Irrevocable Trust prepared on behalf of Plaintiff to be proper and in Plaintiff's best interest; and directing that the appropriate settlement proceeds be securely transferred into the Trust;

4. Approving the funding of the structured settlement annuity for the benefit of Plaintiff as discussed herein;

5. That the Court grant all such other and father relief as to the Court may appear just and proper.

Respectfully submitted, this the 21st day of May, 2026.

By: /s/ Patrick R. Anstead
_____

Patrick R. Anstead
The Richardson Firm, PLLC
455 Ramsey Street
Fayetteville, North Carolina 28301
Telephone: (910) 488-5050
patrick.anstead@therichardsonfirm.com
N.C. State Bar No.: 48259
*Attorney for Plaintiff Antonio Trey Jones*

## Certificate of Service

I, Patrick R. Anstead, hereby certify that I electronically filed and/or served the foregoing *Plaintiff's Memorandum in Support of Joint Motion for Court Approval of Compromise Settlement* on all interested and/or named parties and with the Clerk of Court using the CM/ECF system.

**Via CM/ECF Only**

Mr. F. Marshall Wall
Mr. Ryan Bostic
Cranfill Sumner, L.L.P.
Post Office Box 27808
Raleigh, North Carolina 27611-7808
mwall@cshlaw.com
rbostic@cshlaw.com
*Attorney for Defendants James Thornton, Andrew Worley, Christopher Godwin Sampson County, and The Ohio Casualty Insurance Company*

Mr. J. Locke Milholland, IV
North Carolina Department of Justice
114 West Edenton Street
Raleigh, North Carolina 27603
jmilholland@ncdoj.gov
*Attorney for Defendant Wm. Brady*

Butler Snow, LLP
Mr. Scott Lewis
Mr. Lance Martin
6752 Rock Spring Road, Suite 310
Wilmington, North Carolina 28405
scott.lewis@butlersnow.com
lance.martin@butlersnow.com
*Attorneys for Defendant Wm. Brady*

This the 21st day of May, 2026.

By: ___/s/ Patrick R. Anstead_____
Patrick R. Anstead
The Richardson Firm, PLLC
455 Ramsey Street
Fayetteville, North Carolina 28301
Telephone: (910) 488-5050
patrick.anstead@therichardsonfirm.com
N.C. State Bar No.: 48259
*Attorney for Plaintiff*