<u>**SETTLEMENT AGREEMENT AND RELEASE**</u>

KNOW ALL MEN BY THESE PRESENTS that I, the undersigned, **Antonio Trey Jones, by and through Guardian ad Litem Charles M. Brittain, III,** (hereinafter referred to as "Releasor" or "I" or "Plaintiff"), for and in consideration of the collective total payment of the sum of EIGHT MILLION AND NO/100 DOLLARS ($8,000,000.00), apportioned and paid under the terms set forth herein, the receipt and sufficiency of which is hereby acknowledged, do hereby release and discharge and by these presents do for myself, my heirs, executors, administrators, assigns, and all others who have or may have or may in the future be put to any damage, loss, or expense on my account or my behalf, fully and forever release, acquit, and discharge William Thomas Brady II (in his individual and official capacities), The Public Employees Liability Insurance Commission, the State of North Carolina, the State Bureau of Investigation (SBI), Lexington Insurance Company and AIG Claims, Inc., (together with Lexington Insurance Company, "AIG"), and their respective departments, agencies, employees, officers, agents, council members, heirs, executors, sureties, administrators, insurers, reinsurers, affiliated, related and parent companies, legal representatives, successors, and assigns, past and present, and each of them respectively (hereinafter referred to individually and severally as "Releasees") of and from any and all liability now accrued or hereafter to accrue on account of any and all claims, demands, actions, or causes of action which Releasor may or might have against Releasees, whether known or unknown, asserted or unasserted, by reason of any damages or injuries, including physical injuries, whatsoever sustained or occasioned directly or indirectly by my arrest on or about May 9, 2014, and subsequent detention, incarceration, and release, including, but not limited to, any and all claims arising out of or related to the matters alleged and the claims raised in the lawsuit entitled *Antonio Trey Jones, by and through Guardian ad Litem, Charles M. Brittain, III v. James Thornton, et al.*, currently pending before the United States District Court for the Eastern District of North Carolina, Western Division, Case No. 7:23-CV-01676-FL (the "Lawsuit").

<u>**AGREEMENT TERMS**</u>

**NOW, THEREFORE**, for consideration aforesaid, I, **Antonio Trey Jones, by and through Guardian ad Litem, Charles M. Brittain, III,** by executing this Settlement Agreement and Release, do hereby represent, covenant and agree as follows:

1.  **RELEASE:** The terms set forth above are incorporated herein by reference and expressly made part of this Agreement. This is intended as a full and complete release of all and any claims I, Releasor, may or might have by reason of any and all interactions with William Thomas Brady II, including, but not limited to May 9, 2014, and subsequent detention, incarceration, and release, including, but not limited to, any and all claims arising out of or related to the matters alleged and the claims raised in the Lawsuit. In accepting said sum, I, Releasor, do so in full settlement of any and all such claims, and intend to and do hereby release Releasees of and from any and all liability of any nature whatsoever for all damages or injury to my person and property, including, but not limited to, all claims,

suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, variances, trespasses, damages, judgments, executions, medical expenses, demands, costs, loss of services, loss of earnings, loss of earning potential, loss of consortium, expenses, attorneys' fees, compensation, punitive damages, consequential damages, damages for physical injuries and emotional distress, expenses to which I may have been put or may be put in the future, all consequential damage to me on account of injuries to others, and all consequences, effects, and results of any such injury or damage, whether any of the same are now known or unknown to me, expected or unexpected by me, or have already appeared or developed or may now be latent or may in the future appear to develop.

2. **CONSIDERATION:** Parties hereby expressly state that the consideration referred to above is in full payment for this Settlement Agreement and Release. There is no understanding or agreement of any kind for any further or future consideration whatsoever, either implied and/or expected, except as set forth herein.

3. **NO ADMISSION OF LIABILITY OR FAULT:** It is understood that this settlement is not an admission of any liability or fault but is in compromise of a disputed claim with highly unique circumstances and for said consideration I, Releasor, hereby assume the risk of any damages, injuries, or disability which may now be latent or unexpected or which may hereafter appear, develop, or occur as a result of said incident, and I will hold Releasees harmless from any and all claims therefor. I hereby expressly declare that this is a fair settlement, made in good faith by all the parties hereto.

4. **NO POSITION ON EXCESS SETTLEMENT AMOUNT OR TERMS:** Settlement proceeds to be tendered by SBI on behalf of the SBI Agent represent only the State's retention amount. NCDOJ's agreement reflects approval solely of the State's $1 million self-insured retention. It does not indicate approval of any additional settlement amounts and does not extend to, nor shall it be construed as approval of, any structured settlement, periodic payment arrangement, qualified assignment, annuity, purchase, or related terms set forth herein.

5. **PAYMENT OF SETTLEMENT FUNDS:** A collective total payment of EIGHT MILLION AND 00/100 DOLLARS ($8,000,000.00) (the "Settlement Funds") is to be made to (1) the Trust Account of Releasor's counsel for the benefit of Releasor and (2) a portion of these funds to be made by Lexington Insurance Company to American General Annuity Service Corporation to fund a structured settlement annuity for the benefit of Antonio Trey Jones pursuant to the structure settlement terms and provisions listed below. I, Releasor, expressly acknowledge and agree that said sum is inclusive of all costs and attorneys' fees to which I might otherwise be entitled. The Settlement Funds are to be apportioned as follows:

(A) The State of North Carolina, on behalf of Defendant William Brady and the Public Employees Liability Insurance Commission, noticed a claim in connection with the Lawsuit under Policy No. 01-118-75-55, which has a policy period of July 1, 2013 through July 1, 2014, issued by Lexington Insurance Company to the Public Employees Liability Insurance Commission (the "Claim"). In full settlement of this Claim, AIG, on behalf of Defendant William (Bill) Brady, shall cause total payments to be made under Policy No. 01-118-75-55, as follows: (1) the sum of TWO MILLION EIGHT HUNDRED TWENTY-EIGHT THOUSAND EIGHT HUNDRED EIGHTY TWO DOLLARS AND 65/100 ($2,828,882.65) to the Trust Account of Releasor's counsel for the benefit of Releasor and (2) the sum of FOUR MILLION, ONE HUNDRED SEVENTY-ONE THOUSAND ONE HUNDRED SEVENTEEN DOLLARS AND 35/100 ($4,171,117.35) paid to American General Annuity Service Corporation to fund its future periodic payment obligation and to be made according to the schedule as follows (the "Periodic Payments"):

Payee: Acting Trustee, Antonio Trey Jones Irrevocable Trust

Periodic Payments:

(a) $100,000.00 paid every 3 years, for life, beginning 01-01-2029, with 14 payments guaranteed. Guaranteed payments up to and including 01-01-2068; and
(b) $16,013.00 paid monthly, for life, beginning October 1, 2026, with 480 payments guaranteed. Guaranteed payments up to and including 09-01-2066.

Periodic payments listed above have a current cost of $4,171,117.35.

If Antonio Jones dies prior to 01-01-2068, American General Life Insurance Company will commute
100% of the remaining guaranteed payments to the Antonio Trey Jones Irrevocable Trust.

The commuted value is equal to 95% of the net cost of an annuity that would provide the Commutation Percentage of all future unpaid guaranteed income payments that have been designated to be commuted. Owner will compute this cost using annuity rates of American General Life Insurance Company (AGL) in effect on the date of death of the Annuitant (or last surviving Joint Annuitant, if applicable). The cost will be computed as of the Date of Commutation. The Date of Commutation is within 30 days of the receipt by AGL of proof of death of the Annuitant.
If annuity rates are not available, the commuted value shall be the present value of the commuted payments, discounted at the annual effective yield based on the current bid price as reported in the Wall Street Journal (or an equivalent source of such information) for the highest yielding U.S. Treasury Bond available at the close of business on the date of death of the Annuitant (or last surviving Joint Annuitant,

Antonio Trey Jones Settlement Agreement Page **3** of **9**

if applicable), plus one percent. If the date of death is not a business day, AGL will use the yields reported on the following business day. The commuted value will be computed as of the Date of Commutation.

All sums set forth herein regarding the future periodic payments constitute damages on account of personal physical injuries or physical sickness, within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended.

### Releasor's Rights to Payments

Releasor acknowledges that the Periodic Payments cannot be accelerated, deferred, increased or decreased by the Releasor; nor shall the Releasor have the power to sell, mortgage, encumber, or anticipate the Periodic Payments, or any part thereof, by assignment or otherwise.

### Releasor's Beneficiary

Any payments to be made after the death of Antonio Trey Jones pursuant to the terms this release shall be made to the <u>Antonio Trey Jones Irrevocable Trust.</u> No such designation, nor any revocation thereof, shall be effective unless it is in writing and delivered to the Assignee. The designation must be in a form acceptable to the Assignee before such payments are made.

### Consent to Qualified Assignment

Releasor acknowledges and agrees that Lexington Insurance Company shall make a "qualified assignment", within the meaning of Section 130(c) of the Internal Revenue Codes of 1986, as amended, of the Lexington Insurance Company's liability to make the Periodic Payments set forth above to American General Annuity Service Corporation ("the Assignee"). The Assignee's obligation for payment of the Periodic Payments shall be no greater than that of Lexington Insurance Company (whether by judgment or agreement) immediately preceding the assignment of the Periodic Payments obligation.

Any such assignment, if made, shall be accepted by the Releasor without right of rejection and shall completely release and discharge Lexington Insurance Company from the Periodic Payments obligation assigned to the Assignee.

The Releasor recognizes that, in the event of such an assignment, the Assignee shall be the sole obligor with respect to the Periodic Payments obligation, and that all other releases with respect to the Periodic Payments obligation that pertain to the liability of Lexington Insurance Company shall thereupon become final, irrevocable and absolute.

**Right to Purchase an Annuity**

Lexington Insurance Company, itself or through its Assignee reserve the right to fund the liability to make the Periodic Payments through the purchase of an annuity policy from American General Life Insurance Company ("Annuity Issuer"). The Assignee shall be the owner of the annuity policy, and shall have all rights of ownership. Lexington Insurance Company or the Assignee may have American General Life Insurance Company mail payments directly to the Payee. The Releasor shall be responsible for maintaining a current mailing address for Payee with American General Life Insurance Company.

**Discharge of Obligation**

The obligation assumed by Assignee with respect to any required payment shall be discharged upon the mailing of a check or electronic funds transfer on or before the due date of a valid payment in the amount specified to the address or account of record. In the event any Payee notifies the Assignee that a check has not been received, or that an electronic transfer has not been deposited, Assignee will initiate a stop payment action, and, upon confirmation that such check has not been negotiated, or electronic funds transfer deposited, Assignee shall issue a replacement check or electronic funds transfer.

Payment of Settlement Funds to Releasor from AIG will be made within 90 days from Order Approving Settlement except that Lexington Insurance Company shall fund its periodic payment obligation to American General Annuity Service Corporation on or before July 1, 2026.

The State of North Carolina, through the SBI, on behalf of Defendant William Brady and The Public Employees Liability Insurance Commission, shall cause payment to be made to the trust account of Releasors counsel for the benefit of Releasor in the amount of ONE MILLION and 00/100 dollars ($1,000,000.00).

6.  **TIMING AND CONTINGENCY:** Payment by the State shall be made as soon as practicable after funds are available. Time is not of the essence. The timing of the payment by the State is expressly subject to and contingent upon State funding availability. The State shall make reasonable efforts to secure funding and process payment in a timely manner once funding becomes available, but not before court approval of this settlement.

7.  **METHOD OF PAYMENT:** The payments to Releasor's attorneys for the benefit of Releasor, including payments from AIG and the State, shall be made by wire transfer, ACH payment, or by check payable to "Howard Stallings Law Firm" and delivered to Howard Stallings Law Firm, care of Robby Jessup, 5410 Trinity Rd., Ste 210, Raleigh, NC 27607. The payment to fund the cost of the future periodic payments obligation in the amount of $4,171,117.35 by Lexington Insurance Company shall be made to

American General Annuity Service Corporation and delivered to AIG's structured settlement broker in sufficient time to fund the structured settlement annuity cost by July 1, 2026.

8. **CONFIDENTIALITY AND MARKETING:** The terms of this agreement may be subject to public disclosure pursuant to applicable North Carolina Public Records laws. Under N.C. Gen. Stat. § 132-1.3, settlement documents involving a state agency are public records. To the extent not inconsistent with North Carolina Public Records laws, in consideration for this release, I/the Releasor, including Releasor's agents, Guardian ad Litem, or attorneys, agrees not to report, disclose, publish or disseminate the details of this case to any media outlet including any law firm website, blog, social media platform, or any video streaming platform, the case name, case number, party names, or other identifying descriptors, nor will I link to or reference any such outlet, website, or platform so reporting.

9. **VOLUNTARY EXECUTION:** I, Releasor, acknowledge that any injuries, including physical injuries, sustained in association with the claims released herein are or may be permanent and indefinite and in making this release, I rely wholly upon my own judgment, belief, and knowledge, including that of my attorney(s), of the nature, extent, and duration of said injuries and liability. Further, I have not been influenced or coerced in any manner or to any extent to execute this Settlement Agreement and Release by any representations or statements of the Releasees, and I have voluntarily executed same.

10. **ADVICE OF COUNSEL:** I, Releasor, have had the opportunity to consult with counsel of my choosing. I fully understand the terms of this Settlement Agreement and Release, and I understand that I am making a **full and final** settlement of all claims of every nature and character against the persons, entities, agents, insurers, or administrators hereby released.

11. **FINAL SETTLEMENT:** I, Releasor, voluntarily accept the aforesaid sums for the purpose of making a **full and final** compromise, adjustment, and settlement of all my claims against the parties or entities hereby released, past, present and future, and including any and all claims upon my death, by my beneficiaries, spouse, dependents, heirs, children, estate and legal representatives, and all other persons, and I further acknowledge my understanding that, upon the execution of this document, I discharge any and all claims on my behalf.

12. **FULL UNDERSTANDING:** Guardian ad Litem, hereby declares to be eighteen (18) years of age or over and suffer from no legal disabilities or mental/physical disabilities which would disqualify from executing this Settlement Agreement and Release to the binding effect of Releasor. I further state that I have not taken any drug or medication prior to the execution of this Settlement Agreement and Release which would prevent me from understanding the terms herein.

13. **CAREFUL READING:** I, Releasor, have carefully read the foregoing Settlement Agreement and Release and know and understand the contents thereof, and I execute the same as my own free act. This Settlement Agreement and Release has been fully explained to me by my attorney.

14. **MEDICARE AND OTHER GOVERNMENTAL ENTITIES:** Plaintiff in this case is a Medicare beneficiary. Accordingly, the details of this settlement – including the identity of Plaintiff and his attorney and guardian ad litem, certain personal information about Plaintiff, the amount of the settlement, the date of the settlement, and the injuries alleged – may be reported to the Centers for Medicare & Medicaid Services (CMS), as well as certain agent(s) necessary to facilitate reporting to CMS, pursuant to the responsible reporting entity's duty to comply with Section 111 of the Medicare, Medicaid & SCHIP Extension Act of 2007 (Section 111). Plaintiff acknowledges his duty to cooperate with the Releasees in order to allow the Responsible Reporting Entity(ies) to fulfill the obligation to comply with Section 111. Plaintiff and his Guardian ad Litem agree to provide Releasees with any and all information necessary for them to comply with Section 111 of the MMSEA.

    The parties have attempted to resolve this matter in compliance with both state and federal law and it is believed that the settlement terms adequately consider and protect Medicare's interest and do not reflect any attempt to shift responsibility of treatment to Medicare pursuant to 42 U.S.C. Sec. 1395y(b). The parties acknowledge and understand that any present or future action or decision by CMS or Medicare on this settlement, or Plaintiff's eligibility or entitlement to Medicare or Medicare payments, will not render this release void or ineffective, or in any way affect the finality of this liability settlement.

15. **LIENS:** Plaintiff/Releasor and his Guardian ad Litem represent and declare that there are no outstanding liens, claims, subrogation/trust agreements, recorded or unrecorded, or medical/hospital/workers compensation/social security/government claims or valid liens (county, state, or federal), or other related bills or invoices for which the Releasees are or could be responsible/liable. Plaintiff and his Guardian ad Litem further represent and agree that if any liens exist against these funds paid to Plaintiff, including but not limited to Medicare, Medicaid, ERISA, health insurance, health care provider(s), judgment or any other lien that may or does exist against these funds, they will make all necessary payment(s) to any lienholder(s) in satisfaction of any and all such liens, and I further agree to indemnify and hold harmless Releasees and their attorneys from any claims or liens against these funds. If any governmental entity, or anyone acting on behalf of any governmental entity, seeks damages including multiple damages from Releasee and/or AIG relating to payment by such governmental entity, or anyone acting on behalf of such governmental entity, relating to Plaintiff's alleged injuries, claims or lawsuit, Plaintiff and his Guardian ad Litem will defend and indemnify the Releasee(s) and AIG, and hold the

Releasee(s) and AIG harmless from any and all such damages, claims, liens, Medicare conditional payments and rights to payment, including any attorneys' fees sought by such entities.

16. **PRESUMPTIONS:** This Agreement has been jointly drafted and composed by the respective Parties with the assistance of counsel of their choice. The terms of this Agreement shall not be interpreted or construed in favor of or against any Party.

17. **TAX CONSEQUENCES:** Releasor acknowledges that no Releasee has made representations concerning, nor shall any Releasee be responsible in any manner for, any income tax consequences arising out of this Settlement Agreement and/or the above-described consideration. Any tax liability of Releasor to any federal, state, or local taxing authority shall be Releasor's responsibility. Releasor agrees to make no claim against Releasees regarding the reporting, if any, to taxing authorities of any payment made pursuant to this Settlement Agreement or for the payment or reimbursement of any tax consequences resulting to Releasor as a result of any payment made pursuant to this Settlement Agreement.

18. **SEVERABILITY:** If any of the provisions of this Settlement Agreement are determined to be invalid or unenforceable, that provision so determined shall be severable from the other provisions of this Settlement Agreement, and this Settlement Agreement shall remain in full force and effect as if such invalid or unenforceable provision had not been included herein.

19. **CHOICE OF LAW:** This Settlement Agreement shall be construed according to North Carolina law.

20. **HEADINGS**: The headings of the Sections contained in this Settlement Agreement are inserted only as a matter of convenience and for reference, and in no way define, extend, or describe the scope of this Settlement Agreement or the intent or meaning of any provision hereof.

21. **DISMISSAL OF CIVIL ACTIONS:** I have caused or will cause the action hereinabove referred against Releasees to be dismissed with prejudice by proper orders of the Court within thirty days of court approval of the settlement and any other action which may be pending to likewise be dismissed, with each party to bear their own costs and attorney's fees.

22. **ORIGINALS:** This Settlement Agreement and Release may be signed in one or more counterparts, each of which, when executed with the same formality and in the same manner as the original, shall constitute an original.

This Settlement Agreement and Release contains the ENTIRE AGREEMENT between the parties hereto, and supersedes previous discussions or agreements, verbal or otherwise, that the Parties may have had or made regarding the settlement of their disputes. The terms of this Settlement Agreement and Release are contractual and not a mere recital.

I HEREBY CERTIFY THAT I HAVE READ ALL OF THIS RELEASE, THAT I HAVE CONFERRED WITH MY ATTORNEY CONCERNING THE CONTENTS OF SAME, THAT I FULLY UNDERSTAND ALL OF THE SAME, AND IN WITNESS WHEREOF I HAVE EXECUTED THIS RELEASE ON THE DATE INDICATED.

Date: _____, 2026.

_____
**Antonio Trey Jones**

_____
**Charles M. Brittain, III**
**Guardian ad Litem**

_____
Robert Jessup,
Attorney for Antonio Trey Jones, by and through Guardian ad Litem, Charles M. Brittain, III

Date: _____

_____
Patrick Anstead,
Attorney for Antonio Trey Jones, by and through Guardian ad Litem, Charles M. Brittain, III

Date: _____