IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:23-cv-01676-FL

| | | |
|---|---|---|
| ANTONIO TREY JONES, by and through his Guardian Ad Litem, CHARLES M. BRITTAIN III, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | DECLARATION OF PATRICK R. ANSTEAD |
| JAMES THORNTON, individually and in his official capacity; WILLIAM BRADY, individually and in his official capacity; ANDREW WORLEY, individually and in his official capacity; CHRISTOPHER GODWIN, individually and in his official capacity; SAMPSON COUNTY; and THE OHIO CASUALTY INSURANCE COMPANY, individually, and as a subsidiary to LIBERTY MUTUAL INSURANCE COMPANY, as Surety, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

NOW COMES Patrick R. Anstead, declaring under oath and says as follows:

1.     My name is Patrick Anstead.  I am a citizen and resident of Cumberland County, North Carolina. This declaration is based upon my own personal knowledge.

2.     I am an attorney in Fayetteville, North Carolina.  I graduated from The North Carolina Central University School of Law in 2014.  I have 11 ½ years of practice as a litigator with experience in a variety of areas including, without limitation, criminal defense, medical malpractice, civil rights litigation and complex personal injury claims.

3.     On April 21, 2023, Trey Jones and his father Tony Jones retained me to represent Trey.  Over the last three years I have come to know Trey

Exhibit E

Jones, Tony Jones and the entire Jones family well. I have enjoyed watching Trey develop into a mature adult, become more confident, and acquire new skills.

4.      When Trey and I first met he did not know how to cook, shop for groceries, handle money or even boil water. Now, each time I see Trey, he excitedly tells me what new skill he has learned or what new activity he has tried. Tony has taught Trey activities of daily living that Trey should have learned growing up but did not because he was incarcerated. Trey's confidence and social skills have also improved. I attribute that to Tony's effort to introduce Trey to new social settings and attend a new church.

5.      Trey and his father are always together because Trey is not capable of independent living. I assess that he is unlikely to be in the future. Trey has never obtained a driver's license. When Trey comes to visit the office, his father is beside him.

6.      Because of Trey's intellectual disability he is not a good historian of his case. In April 2023, Trey relied on his father to provide a basic explanation as to why he needed a civil rights attorney. It is my understanding that Trey's court-appointed criminal defense attorney was the first individual to advise Trey's family to seek consultation with a civil attorney about the conduct of defendants. Trey could not have found an attorney to represent him without Tony's assistance.

7.      I agreed to represent Trey and investigate the facts. I started by obtaining a copy of the official court record from the Sampson County Clerk of Superior Court. Then I consulted with Trey's criminal defense attorney who agreed to produce the criminal discovery folder and other documents from the prosecution, including hearing transcripts. The criminal discovery folder included the entire seven-year investigation of the McKenzie Sessoms homicide. I also obtained Trey's school records.

8.      Trey's father told me Trey received Social Security disability benefits since childhood. I attempted to explain to Trey the process he needed to follow at his local social security office to request a complete copy of his disability file, but I quickly realized it was beyond his ability to complete the task alone. Trey's mental limitations were obvious and apparent. Together Trey and I went to the Fayetteville office, drew a number, and waited for a clerk at the window to request his records.

9.      The trip to the social security office was the first time I spent extended time with Trey and got to know him apart from his legal issues. I learned that Trey loves wrestling, movies, racing and his family. Trey is

one of the lowest clients socio-economically that I have ever represented. He lives with his father in a mobile home without heat. They get by on Trey's social security check and by Tony donating plasma and doing odd jobs. Trey and his father suffered from housing insecurity during the course of this representation, and I know they have slept in their car at times.

10.     The moment at which I knew that I could prove Trey's civil rights were violated was when I reviewed his social security disability file. The records detailed the obvious and severe intellectual disability which Trey had suffered under his entire life, but which the defendants denied knowledge of when they charged Trey's with rape and murder.

11.     Achieving a successful outcome in this case required developing a complicated theory of police misconduct liability under federal statutory law and North Carolina common law, developing a record to prove damages, and defending against powerful and complex issues of immunity as well as general liability.

12.     Trey's case is atypical because it sounds in wrongful conviction, but his charges were voluntarily dismissed by the district attorney. Although I had experience representing civil rights claimants in other actions, I knew Trey's case had the potential to yield significant damages and therefore would be subject to intense litigation.

13.     I spent the summer and fall of 2023 consuming the voluminous criminal discovery file, doing countless hours of research, developing the theory of the case, and drafting the Amended Complaint [DE # 7]. The criminal discovery file I obtained pre-suit contained over 3,000 pages of documents and nearly 50 recorded interviews, many of which are hours along. I read law review articles; scholarly commentary; case law from across the circuits; district court orders; magistrate recommendations; legal blogs; memorandums in support of and against motions to dismiss, qualified immunity, summary judgment, and other legal issues that commonly arise in §1983 claims. To prepare the complaint I researched service issues, pleading standards, naming the proper parties, jurisdiction, municipal liability, evidentiary standards, anticipated issues in discovery, substantive defenses, procedural defenses, immunities, jury instructions, guardianships and more.

14.     At the conclusion of my research I assessed that the best litigation strategy within my control, to avoid an early interlocutory appeal and proceed directly to discovery, was to invest significant time in drafting a

well-written, comprehensive, factually detailed, unassailable complaint. Indeed, the Amended Complaint would accomplish exactly that.

15. On October 9, 2023, I obtained an Order from the Superior Court of Bladen County appointing Charles M. Brittain, III, as Trey' Guardian Ad Liem. Trey and Mr. Brittain met in my office on multiple occasions in order for Mr. Brittain to become familiar with Trey's case and his mental limitations. The two developed a good relationship due to Mr. Brittain's avuncular demeanor. Although Trey has never been adjudicated incompetent, I concluded that his cognitive deficits necessitated the appointment of a GAL to assist him in making decisions about his case. After Mr. Brittain's appointment, he reviewed and ratified the fee agreement between Trey and The Richardson Firm. The April 21, 2023, Contract for Legal Services (ratified by Mr. Brittain on December 11, 2023) is attached hereto as **Exhibit A** and is incorporated by reference as if fully set forth herein.

16. The case was filed on December 19, 2023. At the time, I did not know the identity of the insurer of the Sheriff's bond. There is a North Carolina statute requiring sheriff's bonds to be filed with the clerk of court, but that was not done in this case. This explains why there is a Complaint and Amended Complaint. Through discussions with defense counsel for Sampson County, it was agreed the county would voluntarily identify their bond insurer so it could be named properly in the suit and avoid having to involve the court in the issue. As soon as the Amended Complaint was filed, the Sampson County defendants accepted service.

17. Service on Defendant William Brady was not effected until March 4, 2024. Upon information and belief, Defendant Brady attempted to avoid personal service such that it became necessary to serve him in his official capacity through the registered process agent for the North Carolina State Bureau of Investigation.

18. At all times during this litigation, defense counsel Marshall Wall and Ryan Bostic for Sampson County, and defense counsel J. Locke Milholland, IV for Defendant Brady, have conducted themselves as gentleman lawyers and established a standard to compare the professionalism of other defense attorneys to in the future. I am pleased to tell the Court that this case never devolved into the acrimonious litigation that characterizes so many other civil actions.

19. From April 2023 to November 2024, I was Trey's only attorney. In that time, without limitation, the claims were investigated, researched, drafted, filed and served; the Rule 26(f) conference was held; the Initial

Disclosures were drafted and exchanged; a mediator was agreed-upon; written discovery was exchanged; and experts were selected. Due to the size of the criminal discovery folder, initial disclosures and written discovery were time intensive efforts. This case was designated as complex litigation in the Case Management Order issued by Judge Flanagan.

20. I drafted case-specific interrogatories and requests for production of documents to defendants separately. The defendants' answers and responses thereto further strengthened the merits of Trey's case. Defendants' document production collectively exceeded 10,000 pages. I also responded to Defendants' respective sets of interrogatories and requests for production of documents. My administrative assistant and I, alone, were responsible for meeting with Trey and his parents to respond to interrogatories and obtain all of the documents sought by defendants. The written discovery consumed a significant amount of attorney time and firm resources as well as precluded me from accepting other work, especially in the fall of 2024.

21. In the summer and fall of 2024, I located three premier expert witnesses who were invaluable to achieving a successful outcome. I located Don Hayden, a former United States Army Criminal Investigations Division homicide investigator to be a police misconduct expert; Dr. Hayley Cleary, a psychologist who is one of the most well-researched and prominent false confessions experts in the United States; and Dr. Robert S. Brown, Jr., M.D., a University of Virigina Medical School trained forensic psychiatrist with an exceptional bedside manner who developed a superb rapport with Trey and was crucial to bridging both liability and damages.

22. By November 2024, I determined that Trey's case had grown too large and complex for me to handle alone. In addition to the facts discussed above, this claim presented complex insurance coverage issues that I had not encountered in my practice before; the deposition schedule was set to be grueling; and the North Carolina Department of Justice's Public Safety Section made obtaining certain discovery disclosures exceptionally difficult. I anticipated that it would become necessary to engage in discovery motions practice to obtain myriad documents from the SBI.

23. A colleague recommended Robby Jessup of Howard Stallings Law Firm in Raleigh as co-counsel because Mr. Jessup had prior experience handling police misconduct cases and complex insurance coverage issues. An agreement was reached to split the contracted for 40% contingency attorney's fee to 20% of recovery for each firm. Mr. Brittain approved the co-counsel agreement and we continued on. The Co-Counsel Agreement is

attached hereto as **Exhibit B** and is incorporated by reference as if fully set forth herein.

24. I am the only attorney of record – on either side – who has been present at every deposition or court hearing held in this case:

    a. Motion hearing on 02-12-2025 before Judge Numbers
    b. Deposition of Defendant Godwin on 04-28-2025
    c. Deposition of Defendant Worley on 04-29-2025
    d. 1st Deposition of Trey Jones on 05-20-2025
    e. Deposition of Defendant Brady on 05-28-2025
    f. Deposition of Defendant Thornton on 05-29-2025
    g. 2nd Deposition Trey Jones on 06-03-2025
    h. Deposition of Amy Jones on 06-26-2025
    i. Deposition of Jessica Jones on 07-21-2025
    j. Deposition of Dr. Brown on 08-12-2025
    k. Deposition of Ernie Lee on 08-26-2025
    l. Deposition of Don Hayden on 09-04-2025
    m. Deposition of Dr. Cleary on 09-10-2025
    n. Deposition of Tony Jones 09-17-2025
    o. Deposition of Rhonda Wright on 10-17-2025
    p. Deposition of Robby Thigpen on 11-18-2025
    q. Deposition of Errol Jarman on 12-10-2025

25. I drafted the entirety of Plaintiff's Designation of Expert Witnesses which was served on Defendants on 07-14-2025. Before service, I worked with each expert individually and reviewed and analyzed each expert's written report to ensure that it addressed the litigation needs of the case and adhered to the Federal Rules of Civil Procedure and the Rules of Evidence. I have multiples of hours of research per expert to ensure, as best as possible, that the experts' opinions would be admissible or otherwise defensible should they be challenged in later proceedings. Prior to each expert's deposition, I held deposition preparation sessions by telephone or by video conference. In some cases, the preparation sessions were multiple hours. To the extent necessary, I reviewed each expert's underlying facts and data in support of their opinions as well as journal articles, publications and medical or professional literature. The three expert reports themselves totaled over 200 pages. All told, I have a significant number of case hours working directly with each expert.

26. I took the depositions of Detective Andrew Worley, Sheriff Jimmy Thornton, District Attorney Ernie Lee, and Assistant District Attorney Robbie Thigen. Each depositions was approximately 4-6 hours long. The number of hours I spent in preparation for each deposition, identifying

issues, analyzing facts, sorting exhibits, and developing questions was considerable. There is not a deposition taken in this case which was not material to liability and damages. I defended the depositions of Tony Jones, Dr. Hayley Cleary, Dr. Robert Brown and Rhonda Wright.

27. Tony Jones, Trey Jones, Amy Jones, Jesscia Jones and Rhonda Wright each needed intensive in-person preparation for their respective depositions. It should be noted that nearly every lay witness involved in this case suffered from borderline intellectual functioning or a diagnosed intellectual disability such that the preparation for each witness required a unique level of patience and explanation.

28. I reviewed every court filing, motion, memorandum in support, text order, proposed order and/or protective order as they were entered in this case. I am the only attorney of record who has been present at every conference call, status call, and meet and confer held.

29. The skill and proficiency Robby Jessup and his team brought to this case is exceptional. As noted above, they swiftly and capably handled discovery issues that had been made unnecessarily difficult by the State. The insurance coverage situation was quickly untangled at a critical time to allow coverage counsel to become involved, new attorneys of record to appear, and the claim to move forward. Howard Stallings helped carry the financial risk so that The Richardson Firm was not bearing the risk alone. Robby and I split the burden of the intense deposition schedule. Robby and his team advanced this case in numerous and measurable ways as detailed in his affidavit. I can confidently say that I could not have obtained the same result for Trey without Robby Jessup and his team at Howard Stallings, including Joan Davis and Matthew Langston.

30. I am familiar with the customary and reasonable attorney's fees charged by other attorneys and firms in North Carolina who handle complex civil rights litigation. I am familiar with the legal representation agreement that was the basis of my work in this case. It is my professional opinion that a contingency fee of 40% is consistent with custom and practice and is reasonable in cases such as this one. Without a contingency fee arrangement I would not have been able to represent Plaintiff.

31. Risk is inherent in contingent fee arrangements where the monetary recovery can be uncertain, and the attorney's fee is based solely upon the result obtained. Defense verdicts are always a risk in police misconduct cases, particularly where there are contentions about immunity, liability and the causation of damages, such as in this case.

32. I did not record my hours in this case. I estimate that over the last three years of my representation of Trey Jones, I have spent *thousands* of hours in attorney time preparing this case, analyzing defenses, taking and defending depositions, preparing experts, reviewing reports, conducting research, strategizing with counsel, and more. I have spent early mornings, late nights, weekends, holidays and vacations working on Trey's case. If anything, I have sacrificed time that I should have focused on other cases and devoted it to ensuring that this case was handled properly. I invested my personal and professional reputation in this case.

33. While the result obtained for Trey might suggest otherwise, this case was not manifestly "desirable" to other professionals. The Affidavit of Tony Jones makes clear that Trey and his father looked for an attorney for two years but were rejected numerous times. At least one nationally recognized expert in false confessions declined to be involved in the case because, he said, Trey did not have any damages given that he was never *convicted* of rape and murder. At least one attorney within my own firm saw this case as having no merit.

34. The Richardson Firm, PLLC incurred approximately $91,200.56 in third-party expenses developing the facts and the record in this case. The cost and expenses ledger of The Richardson Firm, PLLC, as of May 19, 2026, is attached hereto as **Exhibit C** and is incorporated by reference as if fully set forth herein.

35. Based upon the level of skill required, the customary fee for such work, and the experience and ability I brought to this case, I believe that the requested compensation of 40% is fair and reasonable for the work I have performed and the result I obtained in this case.

36. I have reviewed the terms of the settlement, as well as the Antonio Trey Jones Irrevocable Trust. Based on my experience in other similar cases, and based upon my knowledge of Trey Jones's case, it is my opinion that this settlement is in Trey's best interest. As such, I encourage the Court to approve the proposed compromise settlement.

37. I declare under penalty of perjury under the laws of the State of North Carolina, that the foregoing is true and correct to the best of my knowledge.

38. Further declarant sayeth naught.

[Signature Page to Follow]

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:23-cv-01676-FL

*Declaration of Patrick R. Anstead*

Patrick R. Anstead
N.C. State Bar No. 48259
The Richardson Firm, PLLC
455 Ramsey Street
Fayetteville, North Carolina 28301
(P) 910-488-5050
patrick.anstead@therichardsonfirm.com
*Attorney for Trey Jones*



# THE **RICHARDSON** FIRM
### ATTORNEYS AT LAW

## Contract for Legal Services

It is hereby agreed by the undersigned, Antonio Trey Jones and Antonio Jones (herein referred to as "client"), to employ The Richardson Firm, PLLC for a potential civil claim against all potential responsible parties arising from an incident with law enforcement occurring around May 2014. The terms and condition of such employment are as follows:

1. The Richardson Firm shall receive Forty Percent (40%) of the total amount recovered as compensation for their legal services. The foregoing contingent fee shall be computed on the total amount recovered before payment of any liens, unpaid medical balances, court costs or other expenses, including interest.

2. Out of the total amount recovered and after deducting the aforesaid attorney fee, client will be required to pay the costs associated with the prosecution of its claim, including interest. Client will be entitled to the balance of the funds recovered.

3. If no recovery is obtained, then The Richardson Firm shall receive no additional compensation.

MADE AND ENTERED INTO THIS 21st DAY OF _April_, 2023.

_Antonio Trey Jones_
Client Signature
Antonio Trey Jones

_Antonio_
Print Name

_Antonio Jones_
Client Signature
Antonio Jones

_Antonio Jones_
Print Name

_Attorney_

_seal_
Consented by Charles M. Brittain
as GAL of Antonio Trey Jones

This 11th Day of December, 2023

William O. Richardson ◆ Kris R. Poppe ◆ Matthew H. Richardson
and Associates

455 Ramsey Street ◆ Fayetteville, NC 28301 ◆ P: 910.488.5050 ◆ F: 910.339.4373 ◆ therichardsonfirm.com



PLAINTIFF'S
EXHIBIT
A

## Co-Counsel Agreement

This Representation Agreement ("Agreement") is entered into by and among Antonio Trey Jones, by and through his Guardian Ad Litem, Charles M. Brittain III ("Client"), the Howard Stallings Law Firm ("Firm"), and The Richardson Firm, PLLC ("Co-Counsel") (collectively referred to as "Attorneys").

### 1. Scope of Representation

The Attorneys agree to represent Client in pursuing legal claims related to alleged civil rights violations, including but not limited to claims of malicious prosecution, abuse of process, civil conspiracy, intentional infliction of emotional distress, and deprivation of constitutional rights under 42 U.S.C. § 1983, as well as associated other state law and federal claims, against Defendants Jimmy Thornton, William Brady, Andrew Worley, Christopher Godwin, and Sampson County.

### 2. Contingency Fee Arrangement

Client agrees that Attorneys will be compensated on a contingency fee basis, meaning that Attorneys' fees will be paid only if there is a recovery. The Attorneys' fee shall be 40% of the gross amount recovered by settlement, judgment, or otherwise on Client's behalf.

### 3. Fee Division Between Attorneys

The Attorneys agree to divide the contingency fee as follows: Howard Stallings, P.A. and The Richardson Firm, PLLC will each receive 50% of the total contingency fee. Client consents to this fee-sharing arrangement.

### 4. Costs and Expenses

Attorneys will advance all necessary costs and expenses related to the case, including filing fees, expert witness fees, investigation expenses, and other litigation costs. Such costs and expenses will be reimbursed from any recovery before disbursement.

### 5. Termination of Agreement

Client may terminate this Agreement at any time, with or without cause, by providing written notice to Attorneys. Attorneys may also terminate this Agreement under certain circumstances, such as a breach of this Agreement by Client, a failure to cooperate, or any other reason permitted under applicable rules of professional conduct. In the event of termination, Attorneys will be owed the reasonable value of services rendered and costs advanced.

### 6. Acknowledgment and Acceptance

By signing below, the Guardian Ad Litem acknowledges that he has read, understands, and agrees to the terms of this Agreement and has had the opportunity to ask any questions about this Agreement.

Guardian Ad Litem for Antonio Trey Jones

By: _____ Date: 10-12-24

Howard Stallings Law Firm

By: _____ Date: 11-5-24

The Richardson Firm, PLLC

By: _____ Date: 11-5-24

PLAINTIFF'S
EXHIBIT
B

PENGAD 800-631-6989

## Antonio Trey Jones 2023.148-1

| Date | Advance | Description | Origination Fee | Finance Charges |
|---|---|---|---|---|
| 3/19/2024 | $ 7,500.00 | Expert, Investigator, Filing Fees | | |
| 3/19/2024 | | Origination Fee | $ 150.00 | |
| 3/31/2024 | | Finance Charge | | $ 49.95 |
| 4/30/2024 | | Finance Charge | | $ 115.27 |
| 5/31/2024 | | Finance Charge | | $ 119.11 |
| 6/13/2024 | $ 6,000.00 | Second look Consulting | | |
| 6/13/2024 | | Origination Fee | $ 120.00 | |
| 6/30/2024 | | Finance Charge | | $ 170.61 |
| 7/2/2024 | $ 5,000.00 | Forensic Expert - Retainer | | |
| 7/2/2024 | | Origination Fee | $ 100.00 | |
| 7/31/2024 | | Finance Charge | | $ 291.26 |
| 8/23/2024 | $ 6,000.00 | Second Look Consulting | | |
| 8/23/2024 | | Origination Fee | $ 120.00 | |
| 8/31/2024 | | Finance Charge | | $ 321.49 |
| 9/30/2024 | | Finance Charge | | $ 372.54 |
| 10/22/2024 | $ 3,000.00 | Expert Witness | | |
| 10/22/2024 | | Origination Fee | $ 60.00 | |
| 10/31/2024 | | Finance Charge | | $ 393.67 |
| 11/30/2024 | | Finance Charge | | $ 407.04 |
| 12/31/2024 | | Finance Charge | | $ 416.79 |
| 1/17/2025 | $ 4,595.12 | Dr. Robert Brown | | |
| 1/17/2025 | | Origination Fee | $ 91.90 | |
| 1/31/2025 | | Finance Charge | | $ 446.83 |
| 2/18/2025 | $ 3,000.00 | Second look Consulting | | |
| 2/18/2025 | | Origination Fee | $ 60.00 | |
| 2/28/2025 | | Finance Charge | | $ 451.79 |
| 3/3/2025 | $ 3,881.25 | HHDC Consulting, LLC | | |
| 3/3/2025 | | Origination Fee | $ 77.63 | |
| 3/6/2025 | $ 3,468.75 | Dr. Robert Stanley Brown - Expert | | |
| 3/6/2025 | | Origination Fee | $ 69.38 | |
| 3/31/2025 | | Finance Charge | | $ 625.90 |
| 4/7/2025 | $ 8,250.00 | Second Look Consulting & Robert Stanley | | |
| 4/7/2025 | | Origination Fee | $ 165.00 | |
| 4/30/2025 | | Finance Charge | | $ 713.51 |
| 5/31/2025 | | Finance Charge | | $ 762.09 |
| 6/30/2025 | | Finance Charge | | $ 737.51 |
| 7/21/2025 | $ 7,100.00 | Second Look Invoice #6 | | |
| 7/21/2025 | | Origination Fee | $ 142.00 | |
| 7/31/2025 | | Finance Charge | | $ 799.97 |
| 8/31/2025 | | Finance Charge | | $ 868.83 |
| 9/4/2025 | $ 3,623.40 | Second Look Invoice #7 | | |
| 9/4/2025 | | Origination Fee | $ 72.47 | |
| 9/8/2025 | $ 468.40 | TC8 Video | | |
| 9/8/2025 | | Origination Fee | $ 9.37 | |
| 9/9/2025 | $ 1,882.77 | Second Look Invoice #8 | | |
| 9/9/2025 | | Origination Fee | $ 37.66 | |
| 9/12/2025 | $ 1,181.25 | HHDC Consulting, LLC | | |
| 9/12/2025 | | Origination Fee | $ 23.63 | |
| 9/17/2025 | $ 10,479.17 | Robert Brown, M.D. - Expert Witness | | |
| 9/17/2025 | | Origination Fee | $ 209.58 | |
| 9/30/2025 | | Finance Charge | | $ 988.86 |
| 10/31/2025 | | Finance Charge | | $ 1,116.88 |
| 11/30/2025 | | Finance Charge | | $ 1,066.35 |
| 12/31/2025 | | Finance Charge | | $ 1,091.05 |
| 1/9/2026 | | FC 1-1-26 thru 1-9-2026 | | $ 315.26 |
| 2/5/2026 | | January 2026 Interest Payment | | $ 313.96 |
| 3/5/2026 | | February 2026 Interest Payment | | $ 410.66 |
| 4/5/2026 | | March 2026 Interest Payment | | $ 454.66 |
| 5/5/2026 | | April 2026 Interst Payment | | $ 439.99 |

### Summary

| Total Advances | Total Origination Fee | Total Finance Charges |
|---|---|---|
| $ 75,430.11 | $ 1,508.62 | $ 14,261.83 |

$ 91,200.56



PLAINTIFF'S EXHIBIT

C

PENGAD 800-631-6989