IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:23-cv-01676-FL

| | | |
|---|---|---|
| ANTONIO TREY JONES, by and through his Guardian Ad Litem, CHARLES M. BRITTAIN III, <br><br> Plaintiff, <br><br> v. <br><br> JAMES THORNTON, individually and in his official capacity; WILLIAM BRADY, individually and in his official capacity; ANDREW WORLEY, individually and in his official capacity; CHRISTOPHER GODWIN, individually and in his official capacity; SAMPSON COUNTY; and THE OHIO CASUALTY INSURANCE COMPANY, individually, and as a subsidiary to LIBERTY MUTUAL INSURANCE COMPANY, as Surety, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | DECLARATION OF *GUARDIAN AD LITEM* CHARLES M. BRITTAIN, III |

NOW COMES Charles M. Brittain, III, being first duly sworn and says as follows:

1. My name is Chuck Brittain. I am more than eighteen years of age and a citizen and resident of Cumberland County, North Carolina. I make this declaration based upon my own personal knowledge.

2. I am the owner of the Brittain Law Firm, PLLC. I graduated from Campbell Law School and I have over 30 years of experience practicing litigation, estates and guardianship law.

3. In September 2023, Patrick Anstead approached me about a case he was preparing to file involving Trey Jones and the violation of his civil rights. Patrick was aware that guardianship law is a

# Exhibit G

significant part of my practice, and he asked if I was willing to meet Trey and potentially serve as the GAL.

4.      After meeting Trey and his father and hearing the facts, I agreed to serve.

5.      A threshold issue to resolve was: on what grounds would Mr. Anstead petition the Court to obtain the GAL appointment given that Trey had never been declared incompetent? All of these issues were explained to Trey and Tony.

6.      I have practiced guardianship law for 15 years, and I have served as a guardian in hundreds of cases. Incompetency is a court-imposed legal status which results in the individual losing important rights. For example, to decide where to live, direct their own medical care, manage finances, or get married.

7.      Incompetency should be imposed only when absolutely necessary. Given that Trey is a healthy young man, despite his mental limitations, Mr. Anstead and I decided that an incompetency determination was not in Trey's best interests. Plus, Trey has a close relationship with his father who is able to assist Trey with decision making and managing his daily routine.

8.      Accordingly, the GAL petition requested the Superior Court to appoint me as Trey's GAL under the court's inherent authority under Rule 17 of the North Carolina Rules of Civil Procedure. Trey consented to the appointment after a careful and thorough explanation to him.

9.      I reviewed and approved of the Complaint prior to the case being filed. When Robby Jessup joined the case, I approved of and signed the co-counsel agreement.

10.      Throughout the case, Patrick has kept me updated about the status. I was present in court for the protective order hearing before Judge Numbers in February 2025. I participated in Trey's deposition preparation. I was present for both of Trey's depositions. I have met with Trey and Tony multiple times throughout the case to receive updates from them about what Trey is doing in his daily routine. I was present for the entire 8-hour mediation held in January 2026.

11.      During the litigation I witnessed Mr. Jessup and Mr. Anstead perform excellent legal work and prosecute this case aggressively.

12.     I am satisfied with the settlement they obtained for Trey. It exceeded my expectations given how vigorously the claim was defended, especially by Defendant Brady and the carriers insuring him and the State of North Carolina.

13.     I approve of the 40% fee agreement and request that it be approved by the Court. If one expects talented attorneys to accept complex civil rights claims where litigation is costly and lasts years, then the attorneys who take the personal, professional, and financial risk and achieve an outstanding result deserve to be compensated.

14.     I am familiar with the rates other civil rights attorneys charge throughout North Carolina, and I find the 40% fee to be fair and consistent with that of other attorneys. Due to the co-counsel agreement, Plaintiff's attorneys will receive 20% respectively, which is well below the usual and customary rate charged in complex civil rights litigation.

15.     I have reviewed the Settlement Preservation Trust, the distributions therein and the structured payments, and I believe the terms and the settlement and Court approval thereof to be in Trey's best interests.

This the 5th day of March, 2026.

Charles M. Brittain, III